1
2
3
4
5

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

6
7
8

| | |
|---|---|
| FELICIANO GALLEGOS, | 1:15-cv-01304-EPG |
| Plaintiff, | ORDER DISMISSING SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION |
| v. | |
| ERNEST J LICALSI, *et al.*, | (Doc. 23) |
| Defendants. | ORDER CLOSING CLASE |

9
10
11
12
13
14

Plaintiff, Feliciano Gallegos, appearing *pro se* and *in forma pauperis*, filed a complaint alleging civil rights violations pursuant to 42 U.S.C. § 1983 against numerous defendants.[1] Gallegos initiated this case by the filing the original complaint on August 26, 2015 (Doc. 1). He subsequently filed a First Amended Complaint on December 2, 2015 (ECF No. 13), and a Second Amended Complaint (2AC) on May 11, 2016 (ECF No. 23.) The 2AC is presently before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2).[2]

15
16
17
18
19
20

**A. Background**

Gallegos is a California state prisoner presently serving an indeterminate sentence of twenty-five years to life for an incident occurring on September 3, 1985 resulting from his conviction for assault with a deadly weapon and first degree murder in Madera County,

21
22
23
24

---

[1] Plaintiff has consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c) (ECF No. 7), and no other parties have made an appearance. Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

[2] This case was assigned to the undersigned judge on September 8, 2016. (ECF No. 20.) This Court entered an order on September 13, 2016, re-designating this case as a non-prisoner civil rights case because the case does relate to Plaintiff's conditions of confinement while Plaintiff was a state prisoner. (ECF No. 21.)

25
26
27
28

1

| | |
|---|---|
| 1 | California.[3]  He is presently incarcerated at the Pleasant Valley State Prison in Coalinga, |
| 2 | California. |
| 3 |      Gallegos maintains that he was wrongly convicted of the crimes for which he is presently |
| 4 | serving his sentence.  He asserts that he was not perpetrator of the crime on September 3, 1985, |
| 5 | and there was no physical evidence linking him to the crime. (ECF No. 23 at 22.)   Specifically, |
| 6 | Gallegos states that there was "no blood or marks on hands or body, no blood on clothes or |
| 7 | shoes, no fingerprints or blood on weapon (per D.O.T. lab results), no signs of any altercations |
| 8 | (no rips on clothes etc.)." (*Id.*)  He has filed motions and petitions in various courts in California |
| 9 | seeking to invoke California Penal Code § 1405, entitled Motion for DNA Testing ("§ 1405"), |
| 10 | which provides convicted felons a right to file a motion for post-conviction DNA testing, and |
| 11 | sets out eight detailed fact-based criteria for granting the motion. *Cooper v. Ramos*, 704 F.3d |
| 12 | 772, 775 (9th Cir. 2012) (citing Cal.Penal Code § 1405). |
| 13 |      On May 28, 2013, Gallegos filed a motion for DNA testing pursuant to § 1405 in the |
| 14 | California Superior Court in Madera county. (ECF No. 23 at 34.)  The Court appointed counsel, |
| 15 | attorney Martin Jones of the law firm of Ciummo and Associates (Madera, California), for |
| 16 | Gallegos on August 1, 2013. (*Id*. at 36.)  In order to grant the motion, Cal. Penal Code § 1405 |
| 17 | requires a statement from the movant that "he or she was not the perpetrator of the crime…" and |
| 18 | "why the identity of the perpetrator was, or should have been, a significant issue in the case." |
| 19 | Attorney Jones conducted an investigation into of the circumstances of Gallegos' criminal case |
| 20 | and determined that the identity of the perpetrator was not a disputed issue in the case. (*Id*.) |
| 21 | California Superior Court Judge Ernest J. LiCalsi denied Gallegos' motion for DNA testing by |
| 22 | written order on November 7, 2013. (*Id*.) |
| 23 |      Gallegos filed multiple petitions for a writ of mandate in the Superior Court (*id*. at 40-60) |
| 24 | before ultimately filing the petition in the California Fifth District Court of Appeal on February |
| 25 | 21, 2014 (*id*. at 66).  The Fifth District denied the petition on the merits because the "motion |
| 26 | filed in superior court did not contain the statement required by Penal Code section 1405, |
| 27 | subdivision (b)(1)." (*Id*.) |
| 28 |        [3] *Gallegos v. On Habeas Corpus*, Case No. 14cv1911 (Cal. E.D., April 15, 2015). |

1    Separately, Gallegos filed a complaint with the California State Bar on February 17, 2014,

2    against his appointed attorney, Martin Jones. (*Id*. at 62.)  He alleged that appointed counsel

3    failed to notify him of the status of the Superior Court proceedings.  At the request of the

4    California State Bar, attorney Jones wrote a letter to Gallegos explaining that, after his

5    appointment as counsel, he conducted an investigation. (*Id*. at 70-71.)  At the conclusion of the

6    investigation, attorney Jones determined that it was not appropriate to appropriate to file the §

7    1405 motion because 1) Gallegos was identified at the scene by the victim, and 2) Gallegos

8    admitted being present at the scene in his statement to the probation officer. (*Id*. at 71.)  Thus,

9    attorney Jones was unable to state that the identity of the perpetrator was a significant disputed

10   issue or explain how DNA testing would raise a reasonable probability of a more favorable

11   verdict, as required by § 1405. (*Id*.)

12   On June 11, 2014, Gallegos refiled his motion for DNA testing pursuant § 1405 in

13   California Superior Court, Madera county. (*Id*. at 85.)  Once again, Superior Judge LiCalsi denied

14   the motion on June 30, 2014 by written order. (*Id*. at 90-91.)

15   Gallegos then attempted, in October 2014, to file a petition for writ of habeas corpus in

16   the California Supreme Court. (*Id*. at 93-94.)  The California Supreme Court refused to file the

17   petition because the "California Rules of Court do not authorize such a filing when the petition

18   for writ of habeas corpus is denied without the issuance of an order to show cause." (*Id*.)

19   A petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed in the U.S.

20   District Court for the Eastern District of California on November 26, 2014. *See Gallegos v. On*

21   *Habeas Corpus*, Case No. 14cv1911 (Cal. E.D., November 26, 2015).  Gallegos requested that

22   the federal court issue a certificate of appealability with respect to the October 29, 2014, decision

23   of the California Supreme Court. (*Id*.)  In an order dated April 15, 2015, U.S. Magistrate Judge

24   Barbara M. McAuliffe dismissed Gallegos' habeas petition as excessive and declined to issue a

25   certificate of appealability. *Gallegos v. On Habeas Corpus*, Case No. 14cv1911 (Cal. E.D., April

26   15, 2015).

27   On appeal, the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") denied the

28   request for a certificate of appealability in an order dated June 12, 2015. *Gallegos v. On Habeas*

1    *Corpus*, Case No. 15-15948 (9th Cir. Jun. 12, 2015).  In the same order, the Ninth Circuit stated

2    that "[t]he denial of appellant's habeas petition and request for a certificate of appealability does

3    not preclude him from pursuing his claims in a properly filed civil action brought pursuant to 42

4    U.S.C. § 1983. *See Skinner v. Switzer*, 562 U.S. 521 (2011)."

5         Two months later, Gallegos filed this civil rights action. (ECF No. 23 at 1.)  He states this

6    is not a case related to his confinement in the California prison system. (*Id.* at 2.)  Rather, "it is a

7    direct appeal pertaining to DNA testing on weapon only on controlling case." (*Id.* (citing *Skinner*

8    *v. Switzer*, 562 U.S. 521 (2011).)  He alleges that "courts failed to grant motions and petitions for

9    writ of habeas corpus on all levels up to [the] 9th Circuit Court of Appeals."  As defendants, he

10   names approximately twenty individuals, who consist primarily of judges and court personnel

11   alleged to have been in involved in the decisions to deny his motions and petitions.

12        By denying his motions and petitions, Gallegos asserts that the defendants violated a

13   litany of his constitutional rights with their reckless, deliberately indifferent, malicious and

14   negligent conduct.  As relief, he requests that the Court grant DNA testing "on the weapon only"

15   and to "stop racial discrimination against Mexican nationals at county of Madera courts and

16   police [department]." (ECF No. 23 at 5.)  Gallegos also attempts bring state court claims,

17   including legal malpractice, against his appointed attorneys from the law firm of Ciummo and

18   Associates in Madera, California. (*Id.* at 8.)

19        **B.  Legal Standard - Screening**

20        Under 28 U.S.C. § 1915(e)(2), the Court must conduct an initial review of the Complaint

21   to determine whether it "state[s] a claim on which relief may be granted," is "frivolous or

22   malicious," or "seek[s] monetary relief against a defendant who is immune from such relief." If

23   the Court determines that the Complaint fails to state a claim, it must be dismissed. *Id.* Leave to

24   amend may be granted to the extent that the deficiencies in the Complaint can be cured by

25   amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).  Courts deem a complaint

26   "frivolous" when it lacks "basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319

27   (1989). In other words, a complaint is frivolous where the litigant asserts "not only the inarguable

28   legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325.

1      To state a claim, a complaint must contain "a short and plain statement of the claim

2 showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual

3 allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action,

4 supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth

6 "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft*

7 *v. Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are

8 accepted as true, legal conclusions are not. *Id*. at 678.

9      To determine whether a Complaint states an actionable claim, the Court must accept the

10 allegations in the Complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hosp*., 425 U.S. 738, 740

11 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, *Resnick v.*

12 *Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. *Jenkins*

13 *v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less

14 stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342

15 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after

16 *Iqbal*).

17     **C. Discussion**

18      Gallegos' Second Amended Complaint contains three, distinguishable sets of allegations.

19 The first set are brought pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging that his constitutional

20 rights were violated when the state court judges and court personnel that he names as defendants

21 denied his motions for DNA testing.  The second set of allegations names the federal judges and

22 court personnel who denied Gallegos' requests federal habeas corpus relief as defendants.  The

23 third and final set of allegations is directed against his appointed attorneys for constitutional

24 deprivations and state law claims under California law.  The Court will separately address each

25 set of allegations.

26      *1. Constitutional Claims Against State Judges and Court Personnel*

27      Gallegos' 2AC requests the DNA testing that has been denied by state court and multiple

28 appellate courts.  As this federal court is not an appellate court over state proceedings, the Court

first evaluates whether Plaintiff's case is barred by the *Rooker-Feldman* doctrine as an impermissible attempt to appeal a state court decision to the federal courts.

The Ninth Circuit has explained the *Rooker-Feldman* doctrine as follows:

> The *Rooker–Feldman* doctrine instructs that federal district courts are without jurisdiction to hear direct appeals from the judgments of state courts. Congress, in 28 U.S.C. § 1257, vests the United States Supreme Court, not the lower federal courts, with appellate jurisdiction over state court judgments. *Lance v. Dennis,* 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (per curiam). Accordingly, "[r]eview of such judgments may be had only in [the Supreme] Court." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the "de facto equivalent" of such an appeal. *Noel v. Hall,* 341 F.3d 1148, 1155 (9th Cir. 2003).

> To determine whether an action functions as a de facto appeal, we "pay close attention to the *relief* sought by the federal-court plaintiff." *Bianchi v. Rylaarsdam,* 334 F.3d 895, 900 (9th Cir. 2003) (internal quotation marks and citation omitted). "It is a forbidden de facto appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel,* 341 F.3d at 1163; *see also Skinner v. Switzer,* ⸺ U.S. ⸺, 131 S.Ct. 1289, 1297, 179 L.Ed.2d 233 (2011) (emphasizing that the *Rooker–Feldman* doctrine is limited to cases "brought by state-court losers ... inviting district court review and rejection of the state court's judgments") (internal quotation marks, alteration, and citation omitted).

*Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012).

Here, Plaintiff's complaint seeks the very DNA testing that was denied by state courts and their appellate courts.  Plaintiff's request for relief states in relevant part:

> "that courts grant DNA testing on weapon only . . . I know that when DNA testing on weapon is conducted, it waives me of not having my hands on weapon, period. It will conclude with all the original testing on "weapon" for fingerprints and blood etc.  No fingerprints no blood, no evidence, period.  This will support that I'm innocent and was erroneously convicted, wrongful injustice . . . ."

(ECF No. 23, at p. 5).  Because Plaintiff is seeking relief from the judgement of state courts denying his request for DNA testing, it is barred by the *Rooker-Feldman* doctrine and this court lacks subject matter jurisdiction.

Nor does Plaintiff's case fall within the confines of *Skinner v. Switzer*, 562 U.S. 521

1  (2011), which was referenced by the Ninth Circuit in denying Plaintiff's certificate of

2  appealability when it wrote "[t]he denial of appellant's habeas petition and request for a

3  certificate of appealability does not preclude him from pursuing his claims in a properly filed civil

4  action brought pursuant to 42 U.S.C. § 1983. *See Skinner v. Switzer*, 562 U.S. 521 (2011)."  In

5  *Skinner*, the U.S. Supreme Court held that the *Rooker-Feldman* doctrine did not bar a claim

6  challenging the constitutionality of a Texas statute regarding DNA testing.  The Court allowed the

7  suit, notwithstanding Plaintiff's failed attempts to receive DNA testing pursuant to the Texas

8  statute, on the ground that Plaintiff was challenging the statute itself rather than its application to

9  him, which was what had already been determined in state court:

> [Plaintiff] does not challenge the prosecutor's conduct or the decisions reached by
> the [appellate court] in applying Article 64 to his motions; instead, he challenges,
> as denying him procedural due process, Texas' postconviction DNA statute 'as
> construed' by the Texas courts. . . . [A] state-court decision is not reviewable by
> lower federal courts, but a statute or rule governing the decision may be
> challenged in a federal action.  [Plaintiff]'s federal case falls within the latter
> category.  There was, therefore, no lack of subject-matter jurisdiction over
> Skinner's federal suit.

15  *Skinner*, 562 U.S. at 530-533.

16          Unlike in *Skinner*, Plaintiff's 2AC in this case does not challenge the constitutionality of

17  California Penal Code § 1405.  On the contrary, he claims that numerous state actors violated the

18  California law in refusing him DNA testing.  He is challenging state court decisions already made

19  and not raising an independent constitutional challenge to the underlying law applied.

20          The Ninth Circuit's decision in *Cooper v. Ramos* is instructive here.  In *Cooper*, the Ninth

21  Circuit had the occasion to address a similar scenario to Gallegos' due process claim in this case.

22  704 F.3d at 780–81 (9th Cir. 2012).  The trial court held that the plaintiff's due process claim

23  alleging that the California state court improperly denied his request for DNA testing under §

24  1405 was barred for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. *Id*. at

25  775.  In Contrast to *Skinner*, the Ninth Circuit found that the plaintiff's claim in *Cooper* was a *de

26  facto* appeal of the "particular outcome in his state case" rather than a challenge to the

27  constitutionality of § 1405. *See Cooper*, 704 F.3d at 780-81.  In other words, unlike *Skinner*, the

28

1  plaintiff in *Cooper* was actually seeking relief in the form of reversal of the state court decisions

2  denying his §1405 motion. *See id*.  Thus, the *Rooker-Feldman* barred subject matter jurisdiction

3  because it was a "forbidden de facto appeal of a state court judgment." *Id*. at 781.

4          In this case, Gallegos' claims in this case are exactly like the plaintiffs claim in *Cooper*.

5  Gallegos' §1983 complaint is challenging the particular outcome of the state court decisions

6  denying his request for DNA testing under § 1405. Therefore, like *Cooper*, Gallegos'

7  constitutional claim(s) against the state court judges and court personnel are a forbidden *de facto*

8  appeal of those decisions, and this Court is without subject matter jurisdiction under the *Rooker-*

9  *Feldman* doctrine to consider his claim(s). *See id. See also, e.g., Morrison v. Peterson*, 2013 WL

10  942723, at *6 (N.D. Cal. Mar. 11, 2013) (same), *aff'd*, 809 F.3d 1059 (9th Cir. 2015); *Miramontes*

11  *v. Zellerbach*, 2014 WL 793143, at *10 (C.D. Cal. Feb. 26, 2014) (same); *Martinez v. Dist.*

12  *Attorney of San Joaquin Cty*., 2012 WL 1574818, at *3 (E.D. Cal. May 3, 2012) (holding that a

13  plaintiff's claim fell outside of the parameters of *Skinner* where the plaintiff clearly was not

14  challenging the constitutionality or adequacy of California Penal Code § 1405).

15              *2.  Constitutional Claims Against Federal Judges and Court Personnel*

16          In a similar vein, Gallegos also invites this Court to review judicial decisions dismissing

17  his federal habeas corpus case.  Gallegos alleges that federal judges and court personnel violated

18  his constitutional rights in essentially the same manner as the state court judges and personnel

19  who denied his requests for DNA testing.  Thus, Gallegos is requesting this Court to review for

20  legal error the 2014 decision in this same District that dismissed his habeas case as excessive and

21  the 2015 Ninth Circuit decision denying his request for a certificate for appealability.

22          This Court is without subject matter jurisdiction to review decisions from this District and

23  the Ninth Circuit concerning Gallegos federal habeas corpus petitions.  "Most judicial mistakes or

24  wrongs are open to correction through ordinary mechanisms of review." *In re Castillo*, 297 F.3d

25  940, 947 (9th Cir. 2002), *as amended* (Sept. 6, 2002) (quoting *Forrester v. White*, 484 U.S. 219,

26  227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).  In the federal system, final decisions of the U.S.

27  District Courts are reviewable by the federal courts of appeals. *See* 28 U.S.C. § 1291 ("The courts

28  of appeals … shall have jurisdiction of appeals from all final decisions of the district courts of the

United States…").  Gallegos, in fact, exercised his right to appeal the 2014 habeas corpus decision from this District to the Ninth Circuit Court of Appeals. *Gallegos v. On Habeas Corpus*, Case No. 15-15948 (9th Cir. Jun. 12, 2015).  The Ninth Circuit denied the request for a certificate of appealability in an order dated June 12, 2015. *Id.*  Gallegos' final step in challenging the outcome of the 2014 habeas case would have been an appeal to the U.S. Supreme Court. *See* 28 U.S.C. § 1254.  Jurisdiction over Gallegos' federal habeas case has never been re-conferred or remanded back to this Court.

Furthermore, the IFP statute specifically requires dismissal of any claim that seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii). "Judges are absolutely immune from civil liability for damages for their judicial acts." *Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987) (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (applying judicial immunity to § 1983 action)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978) (citing *Bradley*, 80 U.S. (13 Wall.) at 351, 20 L.Ed. 646)). "Absolute judicial immunity is not reserved solely for judges, but extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'" *In re Castillo*, 297 F.3d at 947 (quoting *Burns v. Reed*, 500 U.S. 478, 499, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (Scalia, J., concurring in part and dissenting in part)).  Thus, the judges and court personnel listed by Gallegos in this case must be dismissed because they are immune. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

> *3.  Claim(s) Against Appointed Attorney(s)*

Finally, it is alleged by Gallegos that the attorney(s) appointed to represent him in the underlying state court proceedings violated his constitutional rights and state law by failing to competently present his § 1405 request for DNA testing to the California Superior Court and for failing to keep Gallegos apprised of the status of the §1405 request.  However, this Court is

1  without subject matter jurisdiction: 1) under 28 U.S.C. § 1331 to consider the constitutional

2  claims brought pursuant to § 1983 and 2) under 28 U.S.C. § 1332 to hear Gallegos' state law

3  claims.

4      Gallegos cannot sustain constitutional claims under § 1983 against his appointed

5  attorney(s) because they were performing traditional functions as counsel to a defendant in a

6  criminal proceeding and were, therefore, not state actors.  "To sustain an action under section

7  1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting

8  under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional

9  or statutory right." *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989) (citations omitted).

10  Attorneys do not act under color of state law when they perform "a lawyer's traditional functions

11  as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325, 102

12  S. Ct. 445, 453, 70 L. Ed. 2d 509 (1981) (A public defender does not act under "color of state

13  law" under § 1983, and is, therefore, not a state actor when performing a lawyer's traditional

14  functions as counsel to a defendant in a criminal proceeding); *Szijarto v. Legeman*, 466 F.2d 864

15  (9th Cir. 1972) (Attorney, whether retained or appointed, does not act "under color of state law"

16  pursuant to § 1983).

17      Finally, this Court is without subject matter jurisdiction to independently consider

18  Gallegos' claims based on state law.  Under the requirements of federal diversity jurisdiction, this

19  Court has original jurisdiction over civil actions where the matter in controversy exceeds the sum

20  or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

21  *See* 28 U.S. C. § 1332(a).  Gallegos is incarcerated at Pleasant Valley State Prison in Coalinga,

22  California.  He brings his state law claims against Richard A. Ciummo and Martin A. Jones of the

23  law firm of Ciummo and Associates in Madera, California.  Thus, the parties are not diverse, and

24  Gallegos cannot meet the requirements for the application of federal diversity jurisdiction for this

25  Court to consider his state law claims.

26      **D.  Conclusion**

27      For the reasons stated above, the Second Amended Complaint is DISMISSED without

28  prejudice for lack for subject matter jurisdiction.  Because amendment would be futile, leave to

1    amend will not granted.

2           The Clerk of the Court is directed to CLOSE this case.

3

4    IT IS SO ORDERED.

5       Dated:   **March 8, 2017**                        /s/ Erica P. Grosjean

6                                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28